IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
June 18, 2002 Session

## STATE OF TENNESSEE v. CHRISTOPHER JOHN EDDINGER

**Direct Appeal from the Criminal Court for Davidson County**
**No. 3084     Steve R. Dozier, Judge**

---

**No. M2001-02493-CCA-R3-CD - Filed September 12, 2002**

---

A Metropolitan Parks and Recreation Department officer observed the defendant, who was wearing only a T-shirt and fishnet stockings and had a spiked leather strap wrapped around his testicles, as the defendant was sitting in his car, with the door open, in a Nashville public park.  The defendant was given a misdemeanor citation charging him with violating Tennessee Code Annotated section 39-13-511, "[p]ublic indecency - [i]ndecent exposure."  He was tried and convicted in the general sessions court, and appealed the conviction to the criminal court, where he was convicted of public indecency, a Class B misdemeanor, and ordered to pay a $500 fine.  The defendant then timely appealed to this court, arguing that the evidence was insufficient, that the search of his vehicle violated his constitutional rights, that he was acquitted of public indecency in his first trial and, therefore, could not be convicted of it following the appeal, and that the testimony of the arresting officer should have been suppressed.  Following our review, we affirm the judgment of conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID G. HAYES and ROBERT W. WEDEMEYER, JJ., joined.

Charles Galbreath, Nashville, Tennessee, for the appellant, Christopher John Eddinger.

Paul G. Summers, Attorney General and Reporter; Kim R. Helper, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Pamela S. Anderson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

At the criminal court trial of this matter, Officer Edmond Strickland, employed by the Davidson County Metropolitan Parks and Recreation Department, testified that at approximately 10 p.m. on July 30, 2000, responding to a call from a dispatcher, he observed the defendant, who was nude from the waist down, sitting in a vehicle with the door open:

I got out of my patrol vehicle and approached the vehicle and looked – looked inside the vehicle – looked inside and he was sitting there with just a black T-shirt on, some fishnet stockings and a leather strap with spikes on it wrapped around his penis.

After he had observed the defendant, thusly attired, in a vehicle parked at the playground area in Shelby Park, Officer Strickland wanted to ascertain whether the defendant posed a threat and shined his flashlight in the car "to see any . . . items that could be, like a gun or anything like that." Inside the defendant's car were "a pair of high heel dressing shoes, someone's lingerie and nudie magazines."

Strickland described, in more detail, what he had observed of the defendant:

Q   Okay. And as you were standing outside the vehicle, you described [the defendant's] state of dress, could you see what parts of his body were visible?

A   His penis and his leg area.

Q   And was there any mistake – I mean, was there any hesitation in your mind or did you know immediately when you saw what you saw what it was?

A   Yes. I mean, it was a penis.

Q   Was there any reason, in particular, why it stuck out?

A   He had the leather strap wrapped around his testicles and the spikes sticking out and it was swollen to about the size of a racket ball [sic]. I guess about that big around.

MR. GALBREATH: I'm sorry. I couldn't hear that.

THE COURT: All right. Can you repeat that?

THE WITNESS: Your client had a leather strap wrapped around his testicles and his penis and it was swollen to the size of a racket ball [sic]. The head of it was swollen to about the size of a racket ball [sic].

MR. GALBREATH: The head of what?

THE COURT: All right. You can ask – you can ask your questions. Just let him ask those and we'll get on with it.

During cross-examination, Officer Strickland was asked to clarify certain of his testimony:

Q   When you looked in the car and saw his – you saw him, did he have an erection on?

A   I don't know if that was an erection or not what he had. I don't know his natural state of being so I can [sic] determine whether that was an erection. I just can tell you what I saw was the tip of his penis.

Q   Was his penis between his legs?

A   Yes.

Q   When you're seated and your penis is between your legs, could someone see it from the side?

A   I guess not normally, unless I had whatever he had on.

Following the testimony of Officer Strickland, the State rested its case in chief.

The defendant, testifying as his only witness, said that he was 39 years old and had never before been arrested. On the day of the incident, he was off from work and had gone to the Hermitage Fitness Center. He said that he had been at the park "almost all day." He did not want to waste the day, so he decided "to go to the park and relax." Just as the officer had approached, the defendant was seated behind the steering wheel of his car, with the door on the driver's side open "two to three inches." He was in the process of restoring his vehicle and, because he had removed the headliner of the vehicle, the interior lights were not working. He denied having with him "sex books" or "girlie magazines," as Officer Strickland had testified that he did.

The defendant testified that a restroom was about 150 yards away. However, needing to urinate, he did not want to go to the restroom because it was unlit and he was concerned that it might be unsafe at that time of night. He said that, because of his work as a security officer, he had with him a "small urine bottle" which he decided to use. In doing so, he accidently urinated on his pants, and was in the process of changing into his sweat pants when the officer arrived. He said that as a light was shined in his car, he covered his lap with the sweat pants. The officer could not have seen other than the defendant's head and shoulders "[u]nless he had some kind of night vision device, infrared or X-ray device with him." The defendant denied that his "testicles or genitals" were visible or that he intended for them to be. He then described the stockings and genital strap that he was wearing, as well as his reasons for doing so:

Q   Now, did you have – you had – describe the stockings you had on.

A   They were just black nylons, thigh high stockings.

Q   Why?

A   They improve circulation. I do a lot of exercising and generally, they make my legs feel a lot better after I work out a lot.

Q   All right. Did you have something on your scrotum?

A   Yes, sir, I did.

Q   What was that?

A   It was a little leather device that I had made to keep my testicles from going up inside my body.

Q   Did you have some trouble with your testicles going inside your body?

A   Yes, sir. Sometimes, the – they draw up and they go up inside the body cavity.

Q   Uh-huh.

A   And I've read that they can be a cause for cancer. So I made a small strap device that I can attach that keeps the scrotum from drawing up.

During cross-examination, the defendant said that he had not been examined by a physician about his testicles drawing up into his body. He further explained the function of the leather device on his genitals:

Q   Okay. And this – this device which was on your testicles, that's a medical device?

A   I used it, yes, sir.

Q   Okay. And have you seen a doctor about this condition?

A   No, sir.

Q    So it's not a doctor prescribed device?

A    No, sir.

Q    And what – what condition does it treat?

A    My testicles are drawn up – the scrotum draws up and the testicles go inside my body.

Q    And where do the spikes play into this?  What do they help?

A    They don't help anything, sir.

Q    So they're just there for decoration?

A    Yes, sir.

Q    Okay.  Now, how long had you had this device on at that – when the officer approached?

A    I don't know.  An hour, two hours, maybe.

Q    And so you're saying that you had just – while the officers were walking up, you had just finished urinating in the – in the bottle; is that correct?

A    Yes, sir.

Q    Okay.  So I assume it's possible to – to urinate with this device on?

A    Yes, sir. The – the device is around the scrotum, not around the penis.

Q    Okay.  So do you disagree with the officer's testimony that your penis was swollen?

A    Yes, sir, I do.

Q    You disagree? Okay.  So you're – you're saying it is possible to urinate?

A   The tube that the urine passes through, sir, does not go through the scrotum.

Q   Are you an opthamologist [sic] or a medical doctor?

A   No, sir.

Q   Okay.  So any testimony that you have as far as light and principles of light and refraction and as far as your mental [sic] condition, that's all just based on your own personal study?

A   Yes, sir, my personal study in the public schools where it's taught in physics and health class.

The defendant denied that the stockings were "fishnet," as the officer had testified, but admitted to having a pair of shoes and some lingerie on the passenger side floor.

## ANALYSIS

We now will consider the issues raised on appeal by the defendant.

### Sufficiency of the Evidence

In his brief, the defendant sets out his argument that the evidence presented was insufficient to sustain the conviction:

> Appellant could not have committed public indecency because the appellant's conduct was not public any more so than if he had been in his home when he urinated in the privacy of his automobile so as to wet himself and removed his jeans to cleanse himself.  It was dark and the arresting officer, acting on an anonymous, hearsay complaint, had no way of seeing the defendant's penis until he looked into the window of the parked automobile with a flashlight.  No one else did.  He ordered the appellant to get out of his automobile which amounted to an arrest, and the evidence is not clear as to whether his nudity was then hidden by clothing the defendant claims he held in front of his body.  Still no one, other than the arresting officers, acting on an alleged, anonymous tip, saw the appellant.

Additionally, the defendant argues in his brief:[1]

> Nowhere in the law is the conduct of the appellant proscribed. He had an absolute right to remove his trousers in the privacy of his automobile just as he would have in a hotel room, his or someone else's house, or any other private place where he might be observed by one who, without permission, peers in to [sic] the property without illumination and sees that which he was not shown.

The State responds with the argument:

> Here, the defendant was in his car in a public place, Shelby Park, with the door open. His penis was exposed. Based on the circumstances, including the leather strapping device worn by the defendant, jurors could reasonably conclude the defendant's nudity was knowing and intentional. Further, by convicting the defendant, the jury obviously accredited the testimony of Officer Strickland who stated that [the defendant] was not covering himself with sweat pants when the officers approached.

In considering whether the evidence was sufficient to support the conviction, we apply the familiar rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560, 573 (1979); see also State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992); Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support

---

[1]The defendant also utilizes this argument to claim that an unlawful search resulted from Officer Strickland's utilizing a flashlight to see into the defendant's vehicle. We respectfully disagree that Strickland's view of the interior of the vehicle was illegal simply because his vision was aided by a flashlight. United States v. Dunn, 480 U.S. 294, 305, 107 S. Ct. 1134, 1141, 94 L. Ed. 2d 326, 337 (1987) ("[O]fficers' use of the beam of a flashlight, directed through the essentially open front of respondent's barn, did not transform their observations into an unreasonable search within the meaning of Fourth Amendment."); State v. Hawkins, 969 S.W.2d 936, 938 n. 2 (Tenn. Crim. App. 1997) ("The fact that the contents of a vehicle may not have been visible without the use of artificial illumination does not preclude such observation from application of the plain view doctrine. . . . The plain view doctrine does not disappear when the sun goes down.").

the findings by the trier of fact of guilt beyond a reasonable doubt.").  All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact.  See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).  "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State."  State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).  Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation.  The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand.  Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses.  In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)).  A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient.  See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Viewing the evidence in the light most favorable to the State, Officer Strickland, responding to a call from his dispatcher at approximately 10 p.m. on July 30, 2000, observed the defendant's vehicle in Shelby Park, a public park in Nashville.  The defendant was clad only in a T-shirt and fishnet stockings and had a leather strap adorned with spikes wrapped around his penis, all of which Officer Strickland, his vision aided by a flashlight, was able to see.  From this testimony, a reasonable jury could conclude that the defendant, while in a public place, knowingly or intentionally appeared in a state of nudity, thus violating Tennessee Code Annotated section 39-13-511(a)(1)(A)(ii).  Although, by the defendant's argument, he could not have committed public indecency because Officer Strickland utilized a flashlight to see that the defendant was exposing his penis, the defendant's penis was in "plain view" of the officer.  While this statute has exceptions to the offense of public indecency, sitting naked from the waist down in a public park after dark is not among them.  Accordingly, taking the State's evidence in the most favorable light, we conclude that the evidence was sufficient to support the defendant's conviction for public indecency.

## Double Jeopardy as to Public Indecency

As his next issue, the defendant argues that, since he was convicted in the general sessions court of indecent exposure, he was acquitted of the offense of public indecency.  Accordingly, by his argument, he could not then be convicted of public indecency in the Davidson County Criminal Court.

The record in this matter has substantial gaps between the defendant's receiving a misdemeanor citation in Shelby Park on July 30, 2000, and being convicted of public indecency on July 31, 2001, in the Davidson County Criminal Court. We now will review that record, such as it is.

The misdemeanor citation sets out, as the "TCA Code" violated by the defendant, "39-13-511." This section is headed "Public indecency – Indecent exposure," defining and proscribing both offenses. The citation form lists "Indecent Exposure" as the "charge/offense."

Tennessee Code Annotated section 39-13-511, pursuant to which the defendant was charged, is styled "Public indecency – Indecent exposure" and sets out both offenses:

> (a)(1)(A) A person commits the offense of public indecency who, in a public place, as defined in subdivision (a)(2)(B), knowingly or intentionally:
>     (i) Engages in sexual intercourse, masturbation, sodomy, bestiality, oral copulation, flagellation, excretory functions or other ultimate sex acts;
>     (ii) Appears in a state of nudity; or
>     (iii) Fondles the genitals of such person, or another person.
>
> (B) A person does not violate this subdivision (a)(1) if such person makes intentional and reasonable attempts to conceal such person from public view while performing an excretory function, and such person performs such function in an unincorporated area of the state.
> . . . .
> (b)(1) A person commits the offense of indecent exposure who:
>     (A) In a public place, as defined in § 39-11-106, or on the private premises of another, or so near thereto as to be seen from such private premises:
>         (i) Intentionally:
>             (a) Exposes such person's genitals or buttocks to another; or
>             (b) Engages in sexual contact or sexual penetration as defined in § 39-13-501; and
>         (ii) Reasonably expects that the acts will be viewed by another and such acts:
>             (a) Will offend an ordinary viewer; or
>             (b) Are for the purpose of sexual arousal and gratification of the defendant; or
>     (B) Knowingly invites, entices or fraudulently induces the child of another into such person's residence for the purpose of attaining

sexual arousal or gratification by intentionally engaging in the following conduct in the presence of such child:

(i)  Exposure of such person's genitals, buttocks or female breasts; or

(ii)  Masturbation.

Tenn. Code Ann. § 39-13-511 (Supp. 1999).

The "narrative" provided in the citation by Officer Strickland states as follows:

On 7-30-00 myself and another ranger were dispatched on a call regarding a suspicious person in an older model vehicle hanging [sic] in the park.  The vehicle matching that description was spotted. When I approached the vehicle the driver was sitting in the driver's seat of the vehicle with the door open wearing a pair of black knee high stockings and some type of bondage restraint with spikes on it wrapped around his penis and testicles.

As we have noted, the misdemeanor citation form sets out that the defendant violated "TCA Code 39-13-511," which proscribes both public indecency and indecent exposure.  Our review of the "narrative" of the defendant's acts shows that the allegations would support either of these offenses.

According to the citation, the defendant was "found guilty" on November 14, 2000, in the Davidson County General Sessions Court, although the offense is not identified.  The "Application for Appeal to Criminal Court of a General Sessions Judgment" utilized by the defendant does not specify the offense for which he was convicted.  Subsequently, the defendant was convicted of public indecency in the Davidson County Criminal Court.  The criminal court judgment form sets out that he was charged with "indecent exposure" on what appears to be "7-30-00," which was marked over to read "11-14-00." However, because of the markover, it is difficult to determine what was intended to be listed as the "filing date." The judgment form further sets out that the defendant was convicted of "public indecency" on July 31, 2001.

We respectfully disagree with the defendant's argument that the result of his trial in general sessions court blocked his subsequent conviction in criminal court for public indecency.  As we have noted, the misdemeanor citation, alleged that the defendant had violated Tennessee Code Annotated section 39-13-511, which proscribes both public indecency and indecent exposure, and the "narrative" of the offense appears to encompass both of these charges, although the charge of "indecent exposure" is listed as the offense.

In his motion for new trial, the defendant argued, as he has on appeal, that he had been convicted in the general sessions court of indecent exposure and acquitted of public indecency. Thus, according to his argument in that motion and on appeal, he could not then be convicted in the

-10-

criminal court of public indecency. However, the trial court rejected that argument, saying that "[t]he Court has no proof before it to make such a determination." We, likewise, cannot divine from the record on appeal of what offense the defendant was convicted in the Davidson County General Sessions Court. Accordingly, we conclude that the defendant has not presented a sufficient record for us to review this issue; and, it is waived. See State v. Miller, 737 S.W.2d 556, 558 (Tenn. Crim. App. 1987); Tenn. Ct. Crim. App. R. 10(b).

In his amended brief, the defendant cites an article entitled "Forum - Newsfront - what's happening in the sexual and social arenas," from the July 2002 issue of Playboy magazine, the article citing, in turn, the holding of the Massachusetts Supreme Judicial Court in Gay & Lesbian Advocates & Defenders v. Attorney General, 763 N.E.2d 38 (Mass. 2002). The action was brought by groups and individuals who alleged that they had committed certain sexual acts "in their residences, vehicles parked in a parking lot, wooded outdoor areas, and secluded areas of public beaches," and feared prosecution for these acts, which were proscribed by the state's "Crimes against Chastity, Morality, Decency and Good Order" prohibiting the "abominable and detestable crime against nature." Arguing that the law violated various of their rights, they brought a declaratory judgment action against certain of its provisions. However, noting that only one of the plaintiffs had been prosecuted, and that the affected attorneys general had stated that "their offices will not prosecute anyone under the challenged laws absent probable cause to believe that the prohibited conduct occurred either in public or without consent," the appellate court concluded that the plaintiffs had failed to demonstrate that an actual controversy existed, and remanded the complaint to be dismissed.

Seeking to utilize the holding in this decision, the defendant argues that the State conceded in its brief that indecent exposure requires proof of "[i]ntentional exposure of a person's genitals in a public place to one or more persons with the reasonable expectation that the acts will be viewed by another and the acts will offend the viewing person or are for sexual arousal or gratification." He then asserts that he should not have been convicted because there is no proof that it was unreasonable for the defendant to believe that he would not be seen by others.

We respectfully disagree that the additional authority or related argument presented in the defendant's brief is relevant. The determination in Gay & Lesbian Advocates & Defenders is only that the plaintiffs had failed to present a justiciable controversy, resulting in the dismissal of their action. Likewise, the quoted language from the State's brief refers to indecent exposure, not public indecency of which the defendant was convicted.

The defendant presented also as an issue the claim that "[t]he evidence testified to by the prosecuting witness should have been suppressed." However, since this argument otherwise is not pursued and no references are made to the record, we find that it is waived. See Tenn. Ct. Crim. App. R. 10(b).

**CONCLUSION**

-11-

Based upon the foregoing authorities and reasoning, we affirm the judgment of conviction.

_____
ALAN E. GLENN, JUDGE